## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LUCKY DICK PROMOTIONS, LLC,

   Plaintiff,

v.                                                CASE NO: 8:16-CV-1488-T-30MAP

POLK COUNTY, a political subdivision of
the State of Florida, et al.,

   Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss First Amended Complaint (Dkt. 38) and Plaintiff's Response in Opposition (Dkt. 39). The Court, having reviewed the motion, response, amended complaint, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.

## BACKGROUND[1]

On or about June 9, 2016, Plaintiff Lucky Dick Promotions, LLC filed the instant action against Defendants, alleging seven counts, all arising out of common allegations related to individual Defendant John D. Bohde's April 12, 2016 Administrative Interpretation ("AI") letter declaring Lucky Dick's conditional use permit CU08-12 ("CU 08-12") null and void and individual Defendant James Freeman's Final Order upholding Bohde's

---

[1] These facts are taken from Plaintiff's amended complaint (Dkt. 37).

administrative interpretation, both of which were issued pursuant to County Land Development Code ("LDC") Section 919.  Lucky Dick alleges that Defendants' conduct violated Lucky Dick's constitutional rights.   Lucky Dick also claims that LDC Section 919 is unconstitutional on its face.  Lucky Dick seeks damages and declaratory and injunctive relief.

Lucky Dick owns real property in Polk County, Florida known as the Triple Canopy Ranch.  Bohde is Polk County's Land Development Director.  Freeman is the County Manager.  The prior owner of Triple Canopy Ranch had obtained a conditional use permit, CU08-12, in order to utilize the property as a recreation park facility that allows all-terrain vehicles, utility terrain vehicles, off-highway vehicles, motor-cross vehicles, and recreational vehicles; primitive camping; concerts; and other scheduled events.  Under County Land Development Code Sec. 302(D), CU08-12 runs with the land.

On November 20, 2014, Lucky Dick purchased Triple Canopy Ranch in reliance on the County's representations that CU08-12 remained valid and in full force and effect. Subsequently, Lucky Dick began hosting events.  In February 2015, Lucky Dick hosted "Mudfest," a mud bog event, where all-terrain vehicle enthusiasts used the property's rugged terrain to ride on trails and drive in the mud and on race tracks specially constructed for all-terrain vehicles.  MudFest also featured an outdoor concert stage with various musical acts. In May 2015, Lucky Dick hosted another mud-based event, the MuddersDay Event, which featured an outdoor concert stage.  A similar event was held in September 2015.

Lucky Dick alleges that the County began to interfere with Lucky Dick's use of Triple Canopy Ranch by accusing Lucky Dick of code violations that were baseless and designed to thwart Lucky Dick's hosting of additional events. Specifically, Lucky Dick began organizing a concert known as CountryFlo that was scheduled for November 2016. On February 17, 2016, Bohde, after reading an article in the local paper about the planned event, sent a letter to Lucky Dick stating that, based on the news article's description of CountryFlo, it appeared that Lucky Dick intended to move away from hosting off-road vehicle events and was planning on hosting an outdoor concert and music festival with 40,000 to 50,000 people in attendance. Bohde's letter also noted that the article referenced that the event would have camp sites, including RV camp sites. The letter stated that CU08-12 was an approval for the use of the subject property as an all-terrain vehicle park and that hosting an outdoor concert like CountryFlo would result in a change of the principal use of the property and would require a "major modification" of CU08-12. The letter noted other restrictions and regulations, such as a curfew, and restrictions on the number of camping sites permitted on the property. In response to the letter, Lucky Dick submitted an application for a modification of CU08-12.

On April 12, 2016, Bohde sent Lucky Dick another letter, regarding "unpermitted activity" on the property, including the alleged placement of "mobile homes" on the property. Subsequently, Bohde, without any notice to Lucky Dick, undertook an "administrative interpretation" of CU08-12 in reliance on LDC Sec. 919. Bohde concluded that "it is [his] administrative interpretation that CU08-12 is hereby null and void." Lucky Dick alleges that

Bohde's "administrative interpretation" was done without notice to Lucky Dick or an opportunity for Lucky Dick to be heard, and affected Lucky Dick's substantial property rights. Lucky Dick also alleges that there is no lawful basis for Bohde to unilaterally declare CU08-12 null and void.

Pursuant to LDC Sec. 919(C), Lucky Dick filed its appeal of Bohde's alleged wrongful and unlawful "administrative interpretation." Lucky Dick alleges that the appeal process set forth in LDC Sec. 919(C) does not provide for an evidentiary hearing, the right to be heard, the right to call witnesses, or the right to produce evidence. Rather, the County Manager is directed to "respond to appeal requests" within thirty days and render a final decision. In conjunction with the appeal, Lucky Dick's counsel requested a meeting with Freeman to discuss the matter. A meeting was informally arranged by way of a telephone conversation with Freeman's office. According to Lucky Dick, without its knowledge, Freeman deemed the informal discussion an "Administrative Appeal Hearing," despite the fact that Lucky Dick was not provided with an adequate opportunity to call witnesses or present evidence. Subsequently, Freeman issued a "Final Order" that upheld Bohde's conclusion in the AI Letter that CU08-12 was null and void.

Lucky Dick alleges that Defendants conspired to "single out" Lucky Dick and shut down its use of the property. Lucky Dick contends that, while the County has "done everything in its power to quash Plaintiff's use of the Subject Property for outdoor concerts like CountryFlo, the County permits other similar outdoor music and camping festivals on comparable property." For example, Lucky Dick alleges that Maddox Ranch is an 80-acre

property located in Polk County, Florida. Under the zoning classifications applicable to both Maddox Ranch and the subject property, Recreational - High Intensity use requires a conditional use permit and a Level 3 Review. Maddox Ranch annually hosts several outdoor concerts and camping festivals, which involve thousands of visitors camping on the property.

Lucky Dick alleges that there are "no constitutionally adequate administrative remedies available to Plaintiff," or, in the alternative, "all administrative remedies have been exhausted or would otherwise prove futile."

On July 7, 2016, Defendants moved to dismiss Lucky Dick's complaint (Dkt. 12). On September 1, 2016, the Court entered an Order directing the parties "to file a joint status report that informs the Court of the status of Plaintiff's pending revised conditional use permit within seven (7) days" (Dkt. 28). On September 6, 2016, the parties filed their Joint Status Report, along with a copy of Plaintiff's new conditional use permit (CU 16-19) and a July 15, 2016 letter from Defendant Polk County advising Plaintiff that CU 16-19 had become final (Dkt. 29). CU 16-19 allows a new conditional use on the subject property, authorizing the following "Recreational, High Intensity" uses on approximately 435.27+/- acres known as the Triple Canopy Ranch: outdoor concerts, music festivals, food events/festivals, corporate outings/retreats, weddings and private social gatherings, arts and crafts festivals, athletic tournaments/events, primitive camping, "glamping," recreational vehicle camping, and vendor/retail areas as concessions associated with the uses/events, subject to additional conditions contained within the permit.

On September 7, 2016, the Court entered an Order directing the parties to "respond in writing on or before Friday, September 9, 2016, as to why this action should not be dismissed as moot in light of Plaintiff's new conditional use permit." (Dkt. 30). The parties filed their responses on September 9, 2016. Defendants argued that the action was moot because Lucky Dick's claims no longer presented a live controversy: CU16-19 authorized Lucky Dick to conduct the activities it requested on the subject property.

Lucky Dick's response argued that the issuance of CU16-19 did not compensate Lucky Dick "for the hundreds of thousands of dollars lost in value and out of pocket expenses incurred trying to restore the Property to its original entitlements," and that the new CU did not compensate Lucky Dick for the "obvious violations of its constitutional rights, no matter how temporary; and the attorneys' fees it had to spend to hold" Defendants accountable. Lucky Dick also argued that the new CU did not moot Lucky Dick's facial procedural due process challenge of LDC Sec. 919. Lucky Dick noted that it intended to amend its complaint to dismiss some of the original claims where the relief requested was no longer necessary in light of CU16-19 (Dkt. 33).

On September 12, 2016, the Court entered an Order directing Plaintiff to amend its complaint. The Court denied Defendants' motion to dismiss as moot and noted that the denial was without prejudice to Defendants to file another motion to dismiss after Plaintiff filed its amended complaint (Dkt. 34).

On September 26, 2016, Plaintiff filed its amended complaint. The amended complaint contains the following counts:

    A.    Count I - Facial challenge to the constitutionality of County LDC Sec. 919 based on Plaintiff's procedural due process rights under the United States Constitution and 42 U.S.C. §1983.

    B.    Count II - The application of County LDC 919 to Plaintiff violates Plaintiff's right to procedural due process under the United States Constitution.

    C.    Count III - The application of County LDC 919 to Plaintiff violates Plaintiff's right to equal protection under the law.

    D.    Count IV - County LDC Sec. 919 and its application to Plaintiff violates the Florida Constitution.

    E.    Count V - Declaratory Judgment that LDC 919 is unconstitutional in that it deprives Plaintiff of its procedural due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

    F.    Count VI - Declaratory Judgment that LDC 919 is unconstitutional in that it deprives Plaintiff of its procedural due process and equal protection rights guaranteed by Article I, Sections 2 and 9 of the Florida Constitution.

    G.    Count VII - Declaring Plaintiff has Equitable Estoppel/Vested Rights in the use of the subject property for outdoor concerts and enjoining Defendants from enforcing the AI Letter or prosecuting any alleged code violations concerning prior land development activity and modular buildings.

    Curiously, the amended complaint does not reference the fact that, as of July 15, 2016, just a little over one month from the date Lucky Dick filed this action (June 9, 2016), Lucky

Dick obtained a new conditional use permit that allows it to conduct the events it seeks to hold on the subject property.

Defendants now move to dismiss the entirety of the amended complaint for mootness. Defendants also argue that each count fails to state a claim for which relief can be granted. Finally, Defendants briefly argue that individual Defendants Bohde and Freeman are entitled to qualified immunity.

## DISCUSSION

**I.     Mootness**

"Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). By its very nature, a moot suit "cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs Street Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328 (11th Cir. 2004) (internal citations omitted). "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion." *Nat'l Advert. Co.*, 402 F.3d at 1332; *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001). However, although a case will normally become moot "when a subsequent [event] brings the existing controversy to an end," *CAMP v. City of Atlanta,* 219 F.3d 1301, 1310 (11th Cir. 2000), when the plaintiff has requested damages, those claims are not moot, *Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.,* 351 F.3d 1112, 1119 (11th Cir. 2003).

Defendants argue that it is undisputed that CU08-12, the conditional use permit that forms the basis of the amended complaint, has been superseded by a new conditional use permit, CU16-19. Defendants state that CU16-19 makes clear that Plaintiff is authorized to conduct musical festivals, athletic tournaments/events, arts and craft festivals, primitive camping/glamping, recreational vehicle camping, and vendor/retail on the subject property. Accordingly, Defendants contend that Plaintiff's claims in this case are now moot because Plaintiff does not allege that LDC 919 will be applied to its current conditional use permit.

Plaintiff counters that it is seeking monetary damages in this case with respect to the constitutional violations that occurred during the period of time that CU08-12 was null and void and that a claim for damages saves a claim from mootness in the face of a change in the underlying facts and circumstances of the lawsuit. Based on *Camp* and *Granite*, the Court reluctantly agrees with Plaintiff. However, Plaintiff's purported damages teeter on the absurd. The alleged constitutional violation spanned barely a month and, based on the amended complaint's facts, did not impact any existing event on the subject property. Moreover, to the extent Plaintiff claims damages associated with the fees and costs of this lawsuit, it does not appear that Section 1983 contemplates such damages. Therefore, any damages Plaintiff suffered from any purported constitutional deprivation are likely nominal, but that is enough to avoid mootness at this stage.

Plaintiff also argues that this case cannot be moot as to its constitutional challenges of LDC Sec. 919 on its face because the new CU16-19 did nothing to amend or repeal LDC Sec. 919. Plaintiff states that, at any time, it could be subject to "another unconstitutional

administrative interpretation under Sec. 919." (Dkt. 39). The Court agrees that, based on Plaintiff's facial challenges to Sec. 919, these claims still present a live controversy.

Accordingly, Defendants' motion to dismiss is denied to the extent that it argues that this action is moot.

## II. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### A. Plaintiff's Procedural Due Process Claims

Defendants argue that Plaintiff's procedural due process claims should be dismissed because adequate state remedies are available and Plaintiff failed to allege that it availed itself of these state remedies. The Court agrees with respect to Plaintiff's as applied procedural due process claims. Notably, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable

under section 1983 arise." *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)).  "[T]he unavailability of adequate remedies is an element of a procedural due process claim—as opposed to an exhaustion requirement." *Flagship Lake Cty. Dev. No. 5, LLC v. City of Mascotte, Fla.*, 559 F. App'x 811, 815 (11th Cir. 2014).

Here, Plaintiff does not allege that it availed itself of the remedies available under Florida law, namely certiorari review, which is available.  *See Bd. of Cty. Comm'rs of Brevard Cty. v. Snyder*, 627 So. 2d 469, 474 (Fla. 1993) (noting same).  Accordingly, Plaintiff's as applied procedural due process claims are dismissed without prejudice to Plaintiff to avail itself of the appropriate remedy under Florida law.

However, the Court will not dismiss Plaintiff's facial challenge to LDC 919 because a facial challenge ripens immediately upon enactment of the alleged unconstitutional law. Plaintiff should keep in mind that "courts strongly disfavor facial challenges" and proving the unconstitutionality of a law is no easy task.  *See Am. Fed'n of State, Cty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 864 (11th Cir. 2013) ("Claims of facial invalidity often rest on speculation.  As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records.  Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.  Finally, facial challenges threaten to short circuit the democratic process

by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008)).

### B.     Plaintiff's Equal Protection Claims

Defendants argue that the allegations of the amended complaint are insufficient to establish an equal protection claim.  A crucial element of a "class of one" equal protection claim is the allegation that the plaintiff was treated differently than a similarly situated comparator.  To be "similarly situated," the comparator must be "prima facie identical in all relevant respects."  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010).

Plaintiff alleges it is similarly situated to Maddox Ranch, which also hosts outdoor concerts and camping events and is required to have the same Level 3 Review for a conditional use permit for Recreation - High Intensity.  Plaintiff also contends that, despite the applicable zoning requirements, the County allows Maddox to host several outdoor concerts and camping festivals annually; yet, the County has denied Plaintiff the ability to host similar outdoor concerts and camping festivals.  At this stage, these allegations are sufficient to state a claim.  *See Pete's Towing Co. v. City of Tampa, Florida*, Case No. 8:08-cv-209-T-23EAJ, 2008 WL 4791821, at *8 (M.D. Fla. Oct. 29, 2008) (holding plaintiff sufficiently alleged a class of one equal protection claim despite the fact plaintiff was "unable to identify the reason for the difference in treatment").

### C. Defendant's Remaining Arguments in Favor of Dismissal

Defendants' remaining arguments in favor of dismissing Plaintiff's claims are duplicative of the arguments already addressed by this Court. Thus, to the extent that Plaintiff's remaining claims under the Florida Constitution and claims for declaratory and injunctive relief relate to the as applied procedural due process challenge, they are similarly dismissed; otherwise, they shall remain in this case at this stage.

Finally, Defendants' arguments in favor of abstention are without merit under the facts of this case.

## III. Qualified Immunity

Defendants briefly argue that Bohde and Freeman are entitled to qualified immunity. At this stage, the Court cannot make this determination. Plaintiff alleges that Bohde had no authority to declare CU08-12 "null and void" under the LDC. Because Bohde had no such authority, Freeman had no authority to ratify Bohde's unauthorized acts. Plaintiff also contends that their actions violated clearly established constitutional rights because Plaintiff's due process and equal protection rights were violated. Accordingly, the Court will not dismiss the claims against Bohde and Freeman at this stage.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss First Amended Complaint (Dkt. 38) is granted in part and denied in part as explained herein.

2.        Defendants shall file an answer to the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on November 3, 2016.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:
Counsel/Parties of Record